UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASACHUSETTS

| | | |
|---|---|---|
| CHET JOHNSTON,<br>Plaintiff,<br><br>v.<br><br>PRESIDENT AND FELLOWS OF MIDDLEBURY COLLEGE,<br>registered to do business as MIDDLEBURY COLLEGE,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:26-cv-12866<br><br>ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Defendant President and Fellows of Middlebury College ("Middlebury College" or the "College"), by and through counsel, submits this Memorandum of Law in Support of Defendant's Motion to Dismiss.

## I. Background

This personal injury action arises from a tragic accident on the campus of Middlebury College. The College, which is located in Middlebury, Vermont, is incorporated and its principal place of business is in Vermont. Declaration of John Nordmeyer, ¶ 3 ("Nordmeyer Dec."). At the time of the accident, Plaintiff Chet Johnston was a senior at the College. On the evening of April 10, 2025, Plaintiff was visiting a fellow student in her room in the Weybridge House on campus. During the early morning hours of April 11th, Plaintiff climbed through a second-floor window of the Weybridge House, and onto a roof. Plaintiff fell off the roof to the ground below and suffered injuries, including paralysis.

Plaintiff asserts a claim of negligence against Middlebury College in this suit and seeks compensatory and punitive damages. *See generally*, Complaint ("Compl."). Several jurisdictional allegations are included in the Complaint, many of which relate solely to Middlebury College's alleged contacts with Massachusetts. Those allegations, however, have no asserted connection to Plaintiff or his claim. *Id.* ¶¶ 6-11, 13-18. Plaintiff also includes jurisdictional allegations focused on the College's efforts in 2020 to recruit him to play football, and alleges that he was living in Scituate, Massachusetts at the time of those events. *Id.* ¶¶ 19-27.

Based on the information available to the College at the time, Middlebury understood that Plaintiff was a resident of—and living in—New Hampshire when it recruited him:

- On January 26, 2020, Ryan Paquette, Middlebury College's Assistant Football Coach and Recruiting Coordinator, emailed Craig Vandersea, the Head Coach at St. Paul's School, a private high school in Concord, New Hampshire. Declaration of Ryan Paquette, ¶¶ 2-3 ("Paquette Dec."). In the email, Mr. Paquette explained to Mr. Vandersea that Middlebury is interested in recruiting student-athletes for the 2021 academic year and asked Mr. Vandersea to pass along certain academic and athletic information about his "top players." *Id.* ¶ 3.
- Mr. Vandersea responded to Mr. Paquette's email the next day, January 27, 2020, and provided a list of "Football Prospects '21." *Id.* ¶ 4. Plaintiff was included in that list, *id.*, and this contact information was provided for him:

P.O. Box 661
Glen, NH 03838
chet.johnston@sps.edu
Cell 603-986-4225

- On March 19, 2020, Mr. Paquette sent an email to Plaintiff at his St. Paul's School email address (chet.johnston@sps.edu) in which he shared NESCAC guidelines, including the fact that all in-person recruiting through April 30, 2020 was prohibited. *Id.* ¶ 5. Mr. Paquette also asked for confirmation that Middlebury had Plaintiff's most recent ACT and SAT scores. *Id.*
- Plaintiff responded to Mr. Paquette's email on March 26, 2020. *Id.* ¶ 6. He updated Mr. Paquette on his ACT and SAT scores and commented, "Fortunately, I have a little weight room in [sic] set up in my garage so I've been staying in shape." *Id.* Mr. Paquette responded that same day and asked if Plaintiff would be available to speak the next day. *Id.* Plaintiff said he was available and provided his cell phone number (603-986-4225). *Id.* Plaintiff's cell phone number has a New Hampshire based area code. *Id.*
- On March 27, 2020, Plaintiff texted his SAT scores to Mr. Paquette from his cell phone (603-986-4225). *Id.* ¶ 7.
- On July 13, 2020, Plaintiff emailed his St. Paul's School transcript for the last three academic years, along with his course schedule for his senior year, to Mr. Paquette. *Id.* ¶ 8. That transcript indicates that Plaintiff's address was P.O. Box 661, Glen, NH 03838. *Id.* Plaintiff also sent his transcript from

his first freshman year[1] at Kennett High School, a public high school in Conway, New Hampshire. *Id.* That transcript also reflects that Plaintiff took Algebra I and French I at Josiah Bartlett School, which is a public elementary school located in Bartlett, New Hampshire for students from pre-kindergarten through eighth grade. *Id.*

- Plaintiff entered into an "Early Decision Agreement" on October 7, 2020, in which he indicated his intent to apply to Middlebury College for early decision. Nordmeyer Dec. ¶ 4. In that agreement, he stated that his address was P.O. Box 661, Glen, New Hampshire and that his high school was St. Paul's School in Concord, New Hampshire. *Id.* The Early Decision Agreement explains: "Early Decision (ED) is the application process in which students make a commitment to a first-choice institution where, if admitted, they definitely will enroll." *Id.*
- On November 4, 2020, Plaintiff submitted his application to Middlebury College through CommonApp. *Id.* ¶ 5. He stated in that application that his "Permanent Address" was "522 Glen Ledge Rd Glen, NH, 03838-6491," and provided an "Alternate Address" of "PO Box 661 Glen, NH, 03838-0661." *Id.* Plaintiff stated that his parents' address was "the same as my home address." *Id.*
- The application submitted by Plaintiff also has a "Writing" section. *Id.* ¶ 6. In the "Community Disruption" part of that section, Plaintiff wrote:

[1] When Plaintiff transferred to St. Paul's School, he repeated his first year of high school. Nordmeyer Dec. ¶ 10.

> I live in northern New Hampshire, but my mother has been a nurse at Boston Medical Center for over twenty years. I grew up accustomed to not seeing her for days at a time, but never to the extent of last spring. She stayed in Massachusetts for nearly three months because she feared exposing my brothers and I to the virus. She worked six days a week during that span. I have never been more proud of my mother, knowing she has and will continue to make a real difference during this pandemic.
>
> Due to a combination of wanting to help out my community and needing to do my part to help at home with my mom gone, I got a job at the local general store. It doubled as the only place for takeout, where I learned how to make a pizza and a killer sub. But I also learned a lot about small business and saw the impacts COVID-19 had on them first hand. Working four days a week and balancing online school I found the true meaning of time management as well. My typical day being online class from 8AM-4PM, work from 5PM-10PM and homework from 11PM-1AM.
>
> *Id.* (emphasis added).

- On December 8, 2020, Middlebury College mailed a decision letter to P.O. Box 661, Glen, New Hampshire 03838-0661, advising Plaintiff that he had been accepted to the College for the 2021-2022 academic school year. *Id.* ¶ 7.
- On or about December 12, 2020, Middlebury College's financial aid offer was made available to Plaintiff through the Admissions' Slate portal. Declaration of Michael McLaughlin, ¶ 3 ("McLaughlin Dec."). The offer letter is addressed to Plaintiff at "522 Glen Ledge Rd Glen, NH, 03838."[2] *Id.*

---

[2] Plaintiff claims that Middlebury College "communicated multiple times with" him and his parents "[t]hroughout 2020" while they were in Massachusetts "regarding the financial aid Defendant Middlebury College was offering Plaintiff." Compl. ¶ 28 (emphasis added). Middlebury does not release financial aid offers until the time of admission, which was December 2020 for Plaintiff. McLaughlin Dec. ¶ 6. While the College may answer general financial aid questions from prospective students during the summer and fall leading into the December Early Decision admissions, the College does not provide any information concerning a student's particular financial aid offer until the student has been admitted. *Id.* Thus, the allegation that Middlebury College communicated with Plaintiff and his parents "[t]hroughout 2020" about "the financial aid Defendant Middlebury College was offering Plaintiff" is not accurate. Compl. ¶ 28 (emphasis added).

- Plaintiff confirmed his commitment to attend Middlebury College when his enrollment deposit was paid on or about December 28, 2020. *Id.* ¶ 4.
- On or about July 29, 2021—approximately seven (7) months after Plaintiff confirmed his commitment to attend Middlebury—the College was notified that Plaintiff's address had changed to 14 Spaulding Avenue, Scituate, Massachusetts, 02066. Nordmeyer Dec. ¶ 9.

Additionally, Robert and Michelle Johnston, Plaintiff's parents, submitted tax returns as part of the financial aid application process at Middlebury College. McLaughlin Dec. ¶ 7. While Middlebury no longer has access to their 2019 tax return that was submitted with Plaintiff's financial aid application for his first year (2021-2022), the College has their joint 2020 return for his second year (2022-2023). *Id.* ¶¶ 7-8. On that return, Mr. and Mrs. Johnston stated that their "Home address" was "PO Box 661 Glen, NH 03838." *Id.* ¶ 8.

These undisputed facts demonstrate that Middlebury College understood, and Plaintiff was, in fact, a resident of New Hampshire—not Massachusetts—when he was recruited to play football. Paquette Dec. ¶ 9; Nordmeyer Dec. ¶ 8. Accordingly, this suit should be dismissed because Middlebury's recruitment activities vis-à-vis Plaintiff do not support the exercise of personal jurisdiction over the College in Massachusetts and venue in this district is improper.

## II. Discussion

### A. Standard of Review on a Motion to Dismiss for Lack of Personal Jurisdiction

When "[f]aced with a motion to dismiss for lack of personal jurisdiction, a district court may choose from among several methods for determining whether the plaintiff has met [his] burden." *Kuan Chen v. United States Sports Acad., Inc.*, 956 F.3d 45, 51 (1st Cir. 2020) (quoting *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016)). "This choice is informed chiefly by the state of the record, the extent to which the merits of the underlying claim are intertwined with the jurisdictional issue, and the district court's assessment of whether it would be 'unfair to force an out-of-state defendant to incur the expense and burden of a trial' without first requiring a substantial showing of the facts necessary to establish jurisdiction." *Id.* (quoting *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145-46 (1st Cir. 1995)).

"Under the prima facie approach — typically used at the early stages of a case — the district court acts not as a factfinder, but as a data collector, asking only whether the plaintiff has proffered facts that, if credited, would support all findings essential to personal jurisdiction." *Id.* (quotations and citations omitted). "If the court determines that it would be unfair to the defendant to proceed with the litigation without first requiring the plaintiff to make more than a prima facie showing of jurisdiction, the preponderance-of-the-evidence approach comes into play." *Id.* "Under that approach, the district court holds 'a full-blown evidentiary hearing at which the court will adjudicate the jurisdictional issue definitively before

the case reaches trial' using a preponderance-of-the-evidence standard." *Id.* (quoting *Foster-Miller, Inc.*, 46 F.3d at 146). If, however, "the assertion of jurisdiction is bound up with the claim on the merits, the possibility of preclusion [may] render[ ] use of the preponderance standard troubling." *Id.* at 52 (quoting *Foster-Miller, Inc.*, 46 F.3d at 146). In that circumstance, the "district court's fallback position typically involves an application of the 'likelihood' standard." *Id.* (quoting *Foster-Miller, Inc.*, 46 F.3d at 146).

The core jurisdictional issue in this case is focused on Middlebury's recruitment of Plaintiff which is entirely separate from the merits of Plaintiff's negligence claim; thus, application of the "likelihood" standard is not warranted. While the prima facie approach is often used in the early stages of a case, doing so here would be inappropriate. The attached Declarations demonstrate that Middlebury College believed and that Plaintiff was, in fact, a New Hampshire resident when he was being recruited, contrary to the allegations in the Complaint. Given that evidence, it would be unfair to Middlebury College to allow this case to proceed for any significant amount of time—much less to trial—without first requiring Plaintiff to make more than a prima facie showing of jurisdiction. For these reasons, the Court should use the preponderance-of-the-evidence approach to resolve this jurisdictional dispute.

**B. The Court lacks personal jurisdiction over Middlebury College.**

"Generally, a claim of personal jurisdiction over a nonresident defendant presents a two-fold inquiry: (1) is the assertion of jurisdiction authorized by statute,

and (2) if authorized, is the exercise of jurisdiction under State law consistent with basic due process requirements mandated by the United States Constitution?" *Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1, 5-6, 389 N.E.2d 76, 79 (1979). "Jurisdiction is permissible only when both questions draw affirmative responses." *Id.* at 6, 389 N.E.2d at 79. Here, these questions must be answered negatively.

**a. The assertion of jurisdiction over Middlebury College is not authorized by Massachusetts' long arm statute, G.L. c. 223A, § 3.**

The allegations in Plaintiff's Complaint focus on Middlebury College's alleged "conduct of business in Massachusetts" as providing a basis for asserting jurisdiction over the College under Massachusetts's long arm statute, G.L. c. 223A, § 3. *See* Compl. ¶¶ 35, 37. As relevant here, a court "may exercise personal jurisdiction over a person … as to a cause of action in law or equity arising from the person's … transacting any business in this commonwealth." G.L. c. 223A, § 3(a) (emphasis added).

Middlebury recruited Plaintiff when it believed, and Plaintiff was, a resident of and living in New Hampshire. Middlebury's recruitment of Plaintiff cannot, therefore, constitute the transaction of business in Massachusetts. And even if Middlebury has engaged in general recruiting and other activities in Massachusetts that were not directed towards Plaintiff—a point the College does not concede—there is no claim that this action arises out of those activities. *See* Compl. ¶ 39 ("Any injuries Plaintiff Johnston sustained at Middlebury College arise directly and

proximately from those Massachusetts contacts, as but for Middlebury's purposeful recruitment of Johnston, he would never have been a student at Middlebury College and would never have sustained the injuries complained of herein") (emphasis added).

**b. The assertion of jurisdiction over Middlebury College does not comport with the requirements of due process mandated by the United States Constitution.**

As explained in the seminal case of *International Shoe Company v. Washington*, 326 U.S. 310 (1945), the Due Process Clause requires the defendant to have sufficient "minimum contacts with [the forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 316 (internal quotation and citation omitted). "Elaborating on this guide, [the Supreme Court has] distinguished between specific or case-linked jurisdiction and general or all-purpose jurisdiction." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017). Specific jurisdiction exists when the corporate defendant's "in-state activity is 'continuous and systematic' and that activity gave rise to the episode-in-suit." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317) (emphasis in original). Conversely, general jurisdiction exists when the defendant's "'continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *Goodyear*, 564 U.S. at 924 (quoting *Int'l Shoe*, 326 U.S. at 318) (emphasis added). Here, neither general nor specific jurisdiction exists.

### 1. The Court does not have general jurisdiction over Middlebury College.

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919 (internal quotation and citation omitted). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home," that is, the corporation's place of incorporation and principal place of business. *Id.* at 924; *see also Daimler AG v. Bauman*, 571 U.S. 117, 137-38 (2014) (reaffirming that "the place of incorporation and principal place of business are paradigm bases for general jurisdiction," and rejecting claim that general jurisdiction exists when a foreign corporation "engages in a substantial, continuous, and systematic course of business" in the forum state, finding that formulation "unacceptably grasping") (internal quotations, alterations, and citations omitted).

Neither of the "paradigm bases" for general jurisdiction exists here. Middlebury College is not incorporated in Massachusetts, nor is its principal place of business located in Massachusetts. Nordmeyer Dec. ¶ 3. There is no basis for asserting general jurisdiction over Middlebury College.

**2. The Court does not have specific jurisdiction over Middlebury College.**

"The Due Process Clause imposes three requirements for exercising specific jurisdiction over out-of-forum defendants." *Kuan Chen*, 956 F.3d at 59. "First, the plaintiff's claim must directly arise from or relate to the defendant's activities in the forum." *Id.* Second, the defendant's forum-state contacts must "represent a purposeful availment of the privilege of conducting activities in that state." *Id.* (quoting *Scottsdale Capital Advisors Corp. v. The Deal, LLC*, 887 F.3d 17, 20 (1st Cir. 2018)). And finally, "the exercise of specific jurisdiction in the forum must be reasonable under the circumstances." *Id.* (citing *Scottsdale Capital Advisors Corp.*, 887 F.3d at 20). "Failure to make any one of these showings dooms any effort to establish specific personal jurisdiction." *Id.* (quoting *Scottsdale Capital Advisors Corp.*, 887 F.3d at 20)). These requirements are not met here.

**i. Relatedness**

"To determine relatedness for tort claims under the requirements of the Due Process Clause, [the Court] 'must probe the causal nexus between the defendant's contacts and the plaintiff's cause of action.'" *Vapotherm, Inc. v. Santiago*, 38 F.4th 252, 260 (1st Cir. 2022) (quoting *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir. 1999)). For this requirement to be met, the plaintiff's claim "'must arise out of or relate to the defendant's contacts' with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017)).

The contacts that Plaintiff argues provide a basis for jurisdiction can be divided into three categories: (1) Middlebury's general recruitment and other miscellaneous activities in Massachusetts that have no connection to Plaintiff, Compl. ¶¶ 6-11, 13-18; (2) Middlebury's specific efforts to recruit Plaintiff to play football, *id.* ¶¶ 19-29; and (3) Middlebury's contacts with Plaintiff and his parents after he committed to Middlebury, *id.* ¶¶ 12, 29-33. Plaintiff does not argue that his negligence claim arises out of or relates to the first category of contacts. Instead, Plaintiff focuses on the second category of contacts in arguing that "but for Middlebury's purposeful recruitment of [him], he would never have been a student at Middlebury College and would never have sustained the injuries complained of herein."[3] Compl. ¶ 39.

There is a fatal flaw in Plaintiff's relatedness argument. Even if his negligence claim could be construed as arising from or relating to Middlebury's efforts to recruit him approximately five years before the accident—a point Middlebury does not concede—those recruitment efforts were undertaken with the understanding that Plaintiff was a resident of and living in New Hampshire, and when he was, in fact, residing in New Hampshire. *See supra* at 2-6. As a result, those New Hampshire-directed activities are irrelevant in an analysis of whether Massachusetts has jurisdiction over Middlebury College in this case.

[3] While Plaintiff appears to refer to the third category of contacts in making this argument, *see* Compl. ¶ 39, Middlebury was not recruiting Plaintiff after he committed to Middlebury in December of 2020. Nordmeyer Dec. ¶ 4 ("Early Decision (ED) is the application process in which students make a commitment to a first-choice institution where, if admitted, they definitely will enroll.") (quoting Ex. A, Early Decision Agreement, signed by Plaintiff).

### ii. Purposeful Availment

The two "key focal points" of purposeful availment are "voluntariness and foreseeability." *Vapotherm, Inc. v. Santiago*, 38 F.4th 252, 261 (1st Cir. 2022) (quotation omitted). "For voluntariness, the contacts must be voluntary and not based on the unilateral actions of another party." *Id.* at 261-62 (quotation omitted). "As to foreseeability, the defendant's contacts in the forum state must give him notice such that he could reasonably anticipate being haled into court there." *Id.* at 262 (quotation omitted). "Given these criteria, a finding of purposeful availment necessarily requires more than the unilateral activities of third parties." *Kuan Chen*, 956 F.3d at 59.

There can be no dispute that Middlebury understood that Plaintiff was from New Hampshire and was living there when it was recruiting him in 2020. In January of 2020, Plaintiff's football coach from St. Paul's School, a New Hampshire-based residential high school, identified Plaintiff as a recruitment prospect and sent his name and contact information—including a New Hampshire address and New Hampshire cell phone number—to Mr. Paquette, Middlebury's Assistant Football Coach and Recruitment Coordinator. Paquette Dec. ¶¶ 3-4. Thereafter, Plaintiff's status as a New Hampshire resident was repeatedly confirmed throughout the recruitment process, *see supra* at 2-6, culminating in his submission of an application for admission to Middlebury College in November of 2020 in which he provided two Glen, New Hampshire addresses and affirmatively stated in his writing submission, "I live in northern New Hampshire …" Nordmeyer Dec. ¶¶ 5-6.

And, when Middlebury decided to accept Plaintiff as a student in December of 2020, it mailed its acceptance letter to Plaintiff's P.O. Box address in Glen, New Hampshire and addressed its financial aid offer to Plaintiff's Glen Ledge Road address. *Id.* ¶ 7; McLaughlin Dec. ¶ 3.

Middlebury's recruitment of Plaintiff when it was believed that he was a resident of and living in New Hampshire does not establish that Middlebury College purposefully availed itself of the privilege of conducting activities in Massachusetts. In other words, recruiting Plaintiff while believing that he was from New Hampshire did not—indeed, could not—have provided Middlebury with notice that it would be haled into Massachusetts to defend itself in this litigation. *Kuan Chen*, 956 F.3d at 61-62 ("A defendant cannot be said to have purposefully availed itself of the benefits of a forum with respect to a given plaintiff when it has neither initiated any in-forum activity involving that plaintiff nor dealt with him knowing that he was located in the forum.").

Further, Middlebury College's contacts with Plaintiff and his parents after they moved to Massachusetts in 2021 do not provide a basis for finding purposeful availment either. Their decision to move to Massachusetts is exactly the kind of unilateral activity that courts have held cannot create jurisdiction.[4] *Id.* ("Simply put, jurisdiction cannot be carted from state to state, enabling a plaintiff to sue in any state to which he chooses to roam.") (citations omitted); *Harlow v. Children's Hosp.*, 432 F.3d 50, 63 (1st Cir. 2005) ("Jurisdiction cannot be created by and does

---

[4] Similarly, the unilateral decision of Plaintiff's parents to make tuition payments from a Massachusetts bank cannot be relied upon to establish purposeful availment.

not travel with the plaintiff ... wherever [he] goes."); *see also Am. Int'l Rent-A-Car Corp. v. Cross*, 709 F. Supp. 272, 276 (D. Mass. 1989) ("In all of the cases most analogous to the instant action, wherein the plaintiff had relocated to the forum once its relationship with the defendant was established, no personal jurisdiction has been exercised. It is clear that unilateral activity by one who claims a relationship with the non-resident defendant cannot satisfy the requirement of contact with the forum state.") (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) and *Kulko v. Superior Court of California*, 436 U.S. 84, 93–94 (1978)).[5]

**iii. Reasonableness**

"To evaluate the reasonableness requirement, the Supreme Court has provided a set of gestalt factors to consider." *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 10 (1st Cir. 2009) (quotation omitted). These factors include: "[1] the defendant's burden of appearing, [2] the forum State's interest in adjudicating the dispute, [3] the plaintiff's interest in obtaining convenient and effective relief, [4] the interstate judicial system's interest in obtaining the most efficient resolution of the controversy, and [5] the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (citations omitted) (bracketed numbers added). "The reasonableness stage of the jurisdictional analysis evokes a sliding scale." *Levin v. Harned*, 304 F. Supp. 2d 136, 146 (D. Mass. 2003). "[T]he weaker the plaintiff's showings on the first two prongs (relatedness and purposeful

[5] Even if Middlebury College's contacts with Massachusetts that have no connection to Plaintiff are sufficient to establish purposeful availment generally, see Compl. ¶¶ 6-11, 13-18—a point Middlebury does not concede—there can be no dispute that Plaintiff's negligence claim does not arise out of or relate to those contacts.

availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness." *Id.* (quoting *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 210 (1st Cir. 1994)).

The Court only needs to consider such additional, "gestalt" factors when the relatedness and purposeful availment requirements for specific jurisdiction have been met. *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1091 n.11 (1st Cir. 1992). Here, there is no basis for asserting specific jurisdiction over Middlebury College, and, thus, no need to consider other factors. Should the Court elect to consider them, however, they weigh decidedly against the assertion of jurisdiction.

**[1] The burden on Middlebury College.** The exercise of jurisdiction over Middlebury College would be burdensome. Although Vermont and Massachusetts are neighboring states, it is undoubtedly burdensome to defend a suit in a foreign jurisdiction. The vast majority of the witnesses and documentary evidence relating to the claim against Middlebury is located in Vermont because that is where Plaintiff attended college before the accident, where the accident occurred, and where Plaintiff received treatment immediately following the accident. While modern communication and transportation somewhat ease the burden of being forced to litigate this case in Massachusetts, this factor weighs in Middlebury

College's favor. This is particularly true when Middlebury College understood that Plaintiff was from New Hampshire, not Massachusetts, when it recruited him.

**[2] The forum State's interest in adjudicating the dispute.** Plaintiff was injured in Vermont and the alleged acts or omissions upon which his negligence claim is based all occurred in Vermont. Further, Plaintiff was not a resident of Massachusetts when Middlebury College recruited him in 2020. Under these circumstances, Massachusetts has little, if any, interest in adjudicating this case. Conversely, Vermont has a strong interest in adjudicating this case since it concerns the alleged negligence of a college formed under its law and operating within its boundaries. This factor weighs decidedly in Middlebury College's favor.

**[3] The plaintiff's interest in obtaining convenient and effective relief.** While Plaintiff has a personal interest in litigating this case in Massachusetts for his own convenience, Massachusetts is not the only jurisdiction that can provide him with effective relief. Vermont can provide effective relief, and, for the majority of the witnesses, Vermont would be the more convenient forum.

**[4] The interstate judicial system's interest in obtaining the most efficient resolution of the controversy.** As previously noted, the vast majority of the evidence and witnesses pertaining to the alleged liability of Middlebury College are located in Vermont, not Massachusetts. Thus, this factor weighs in favor of Middlebury.

**[5] The shared interest of the several States in furthering fundamental substantive social policies.** This factor focuses on the interests of

the states in furthering substantive social policies. Here, Vermont has a strong substantive social policy interest in adjudicating allegations of negligence against a college formed under its law and operating within its boundaries. Massachusetts' connection to this dispute arises only because Plaintiff and his parents chose to move to this forum after he committed to attending Middlebury. It is doubtful that litigating this case here would materially further any substantive social policy of Massachusetts. On balance, this factor weighs heavily in favor of Middlebury.

In sum, even if Plaintiff were able to establish minimum contacts with respect to Middlebury College—a proposition Middlebury College rejects—the balance of the reasonableness factors demonstrates that the assertion of personal jurisdiction over it would violate "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.

**C. Venue in this District Court is improper.**

As relevant to this case, a civil action may be brought in (1) a judicial district in which the defendant "resides," (2) a judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred," or (3) if there is no district in which an action may otherwise be brought, any judicial district in which the defendant is subject to personal jurisdiction. 28 U.S.C. § 1391(b)(1)-(3). The first and third options do not apply because Middlebury does not "reside" in Massachusetts, *id*. § 1391(c)(2) (defendant corporations "reside" in any district where they are "subject to the court's personal jurisdiction with respect to the civil action in question"), and venue is proper in Vermont, where Middlebury is located.

In considering the second basis for venue, no part—much less a "substantial part of the events or omissions giving rise" to Plaintiff's negligence claim—occurred in Massachusetts. The events leading up to Plaintiff's admission to Middlebury College are irrelevant to his negligence claim. Even if they had some marginal relevance, they took place in New Hampshire, not Massachusetts. *See supra* at 2-6. And the fact that Plaintiff is now allegedly a resident of Massachusetts and is presumably receiving medical treatment there does not establish that venue in this court is proper either. *See e.g., Rodriguez-Torres v. Am. Airlines Corp.*, 8 F. Supp. 2d 150, 151 (D.P.R. 1998) (holding that plaintiff's receipt of medical treatment in Puerto Rico for injuries that she suffered while in Florida "does not render Puerto Rico a proper venue for the action—that medical treatment is not part the events or omissions giving rise to the claim"). Accordingly, this case should also be dismissed for improper venue.

## III. Conclusion

Defendant Middlebury College respectfully requests that the Court grant this motion and dismiss this suit for lack of personal jurisdiction and improper venue.

Dated: August 27, 2026

Respectfully submitted,

/s/ Margarita I. Warren
Margarita I. Warren, Esq.
Dinse P.C.
209 Battery Street, P.O. Box 988
Burlington, VT 05402-0988
802-864-5751
mwarren@dinse.com
BBO # 683098
Counsel for Defendant President and Fellows of Middlebury College

**LOCAL RULE 7.1(a)(2) CERTIFICATE**

I hereby certify that on August 27, 2026, I conferred with Plaintiff's counsel, Carolyn Latti, Esq., and attempted in good faith to resolve or narrow the issues involved in this motion. The parties have been unable to reach an agreement concerning the relief requested in this motion.

/s/ Margarita I. Warren
Margarita I. Warren, Esq.